1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JOHN I. BRAEGELMANN,

                              Plaintiff,

        v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                              Defendant.

Case No. 3:13-cv-05773-BHS-KLS

REPORT AND RECOMMENDATION

Noted for July 11, 2014

        Plaintiff has brought this matter for judicial review of defendant's denial of his

application for disability insurance benefits.  This matter has been referred to the undersigned

Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as

authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976).  After reviewing

the parties' briefs and the remaining record, the undersigned submits the following Report and

Recommendation for the Court's review, recommending that for the reasons set forth below,

defendant's decision to deny benefits should be reversed and this matter should be remanded for

further proceedings.

FACTUAL AND PROCEDURAL HISTORY

        On June 18, 2010, plaintiff filed an application for disability insurance benefits, alleging

disability as of January 7, 2008, due to a back injury, depression, anxiety, and post traumatic

stress disorder ("PTSD").  See Administrative Record ("AR") 208-11, 235-38, 254.  Plaintiff's

application was denied upon initial administrative review and on reconsideration.  See AR 99-

REPORT AND RECOMMENDATION - 1

104, 107-09.  A hearing was held before an administrative law judge ("ALJ") on November 1, 2011; this hearing was postponed to allow plaintiff time to hire an attorney.  See AR 31-46. Plaintiff hired an attorney and, prior to his second ALJ hearing, amended his alleged disability onset date to October 31, 2009, the last day of plaintiff's employment in the US Army.  See AR 12, 244.  The second ALJ hearing was held on March 23, 2012, at which plaintiff, represented by counsel, appeared and testified, as did plaintiff's wife and a vocational expert ("VE"). See AR 47-98.

On April 23, 2012, the ALJ issued a decision in which plaintiff was determined to be not disabled.  See AR 9-30.  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on July 22, 2013, making the ALJ's decision defendant's final decision. See AR 1-6; see also 20 C.F.R. § 404.981.  On September 4, 2013, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's decision.  See Dkt. No. 1.  The administrative record was filed with the Court on November 22, 2013.  See Dkt. No. 10.  The parties have completed their briefing, and thus this matter is now ripe for judicial review and a decision by the Court.

Plaintiff argues the ALJ's decision should be reversed and remanded to defendant for payment of benefits, because the ALJ erred: (1) in evaluating the medical evidence in the record; (2) in evaluating plaintiff's Veterans Administration disability rating (3) in discounting plaintiff's credibility; (4) in rejecting the lay witness evidence in the record; (5) in assessing plaintiff's residual functional capacity; and (6) in finding plaintiff to be capable of performing other jobs existing in significant numbers in the national economy.  The undersigned agrees the ALJ erred in determining plaintiff to be not disabled, but, for the reasons set forth below, recommends that while defendant's decision should be reversed, this matter should be remanded for further administrative proceedings.

REPORT AND RECOMMENDATION - 2

DISCUSSION

The determination of the Commissioner of Social Security (the "Commissioner") that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v. Comm'r of the Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing Brawner v. Sec'y of Health and Human Serv., 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted); see also Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record.").  "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).  "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)). [1]

---

[1] As the Ninth Circuit has further explained:

. . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached.  If the [Commissioner]'s findings are supported by

REPORT AND RECOMMENDATION - 3

1

2      I.      The ALJ's Evaluation of Plaintiff's Veterans Administration Disability Rating

3              Plaintiff argues the ALJ erred by rejecting his 100% disability rating from the Veterans

4      Administration ("VA").  Dkt. No. 12 pp. 7-9.   Plaintiff was granted entitlement to the 100%

5      disability rate effective October 31, 2009, due to post traumatic stress disorder, sleep apnea,

6      lumbosacral strain, limited motion of arm, and hypertension.   AR 240.  In May 2010, plaintiff's

7      disability rating for his back impairment was increased from 20% to 40%.  See  AR 240; see also

8      591, 738, 741-42, 744-446, 753-56, 814-16, 819, 829 (as of May 2010, plaintiff's service

9
       connected disability rating was 50% for PTSD, 50% for sleep apnea , 40% for lumbosacral
10
       strain, 20% for limited range of motion of arm, and 10% for hypertensive vascular disease).
11
       Although some of the medical records associated with plaintiff's disability rating are contained
12
       in the administrative record, plaintiff's Rating Decision—which would have provided a detailed
13
       explanation of the VA decision, the evidence considered and the reasons for the VA decision—is
14

15     not.  See AR 240, 243, 509-17, 657-64.

16             For this reason, it is difficult, if not impossible, to ascertain the actual basis for the VA's

17     disability rating decision.  Nonetheless, the ALJ gave three reasons for giving little weight to

18     plaintiff's VA disability rating:

19
               First, it is not clear that the VA had evidence before it such as the consultative
20             examinations or the hearing testimony of [plaintiff] and the vocational expert
               before arriving at its determination.
21

22             Second, the decision by the VA is not consistent with [plaintiff's] activities…

23

24     _____

25     substantial evidence, the courts are required to accept them.  It is the function of the
       [Commissioner], and not the court's to resolve conflicts in the evidence.  While the court may
26     not try the case de novo, neither may it abdicate its traditional function of review.  It must
       scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are
       rational.  If they are . . . they must be upheld.

       Sorenson, 514 F.2d at 1119 n.10.

       REPORT AND RECOMMENDATION - 4

> Finally, to the extent that the decision maker at the Veterans Administration may
> have placed too much reliance on [plaintiff's] subjective complaints or his
> presentations of pain and cognitive impairments during examinations, which are
> not fully credible for the reasons discussed above.

AR 22-23.   These are not persuasive, specific, valid reasons supported by the record sufficient to

reject plaintiff's 100% VA disability rating. See McCartey v. Massanari, 298 F.3d 1072, 1076

(9th Cir. 2002).

Although a determination by the VA about whether a claimant is disabled is not binding

on the Social Security Administration, an ALJ must consider that determination in reaching her

decision. McCartey, 298 F.3d at 1076; 20 C.F.R. § 404.1504.  Further, the ALJ "must ordinarily

give great weight to a VA determination of disability." McCartey, 298 F.3d at 1076.  This is

because of "the marked similarity" between the two federal disability programs:

> Both programs serve the same governmental purpose--providing benefits to those
> unable to work because of a serious disability.  Both programs evaluate a
> claimant's ability to perform full-time work in the national economy on a
> sustained and continuing basis; both focus on analyzing a claimant's functional
> limitations; and both require claimants to present extensive medical
> documentation in support of their claims.  Both programs have a detailed
> regulatory scheme that promotes consistency in adjudication of claims.  Both are
> administered by the federal government, and they share a common incentive to
> weed out meritless claims.  The VA criteria for evaluating disability are very
> specific and translate easily into SSA's disability framework.

Id.  However, "[b]ecause the VA and SSA criteria for determining disability are not identical,"

the ALJ "may give less weight to a VA disability rating if [she] gives persuasive, specific, valid

reasons for doing so that are supported by the record." Id. (citing Chambliss v. Massanari, 269

F.3d 520, 522 (5th Cir. 2001)(ALJ need not give great weight to a VA rating if she "adequately

explain[s] the valid reasons for not doing so.")).

**A.  The ALJ's first reason for rejecting plaintiff's VA disability rating**

REPORT AND RECOMMENDATION - 5

1    The first reason offered by the ALJ to reject plaintiff's VA rating , that it was "not clear

2  that the VA had evidence before it such as the consultative examinations or the hearing

3  testimony of [plaintiff] and the vocational expert before arriving at its determination", was not a

4  valid reason supported by the record. AR 22.  If they ALJ wished to bring further clarity to the

5  record regarding the specifics of plaintiff's VA rating, the ALJ could have done so by requesting

6  plaintiff's Rating Decision from the VA.  This document would have provided a detailed

7  explanation of the VA decision, including the evidence considered and the reasons for the VA

8  determination.  See AR 240, 243.  Additionally, the ALJ fails to adequately explain how the

9  subsequent medical and testimonial evidence acquired by the Commissioner contradicts the

10  VA's 100% disability rating.  See AR 22-23; McCartey, 298 F.3d at 1076 (citing Chambliss, 269

11  F.3d at 522 (ALJ must adequately explain reasons for not giving great weight to VA rating)).

12  Finally, although new evidence "or a properly justified reevaluation of old evidence" may

13  constitute a persuasive, specific, and valid reason for rejecting a VA disability rating, errors in

14  the ALJ's assessment of the medical evidence available to the VA, that may have formed a basis

15  for the VA's determination, prevent this Court from affirming the ALJ's first basis for rejecting

16  plaintiff's VA rating.  See Valentine v. Comm'r Soc. Sec. Admin, 574 F.3d 685, 695 (9th Cir.

17  2009)(affirming the ALJ's rejection of a claimant's VA rating because the VA rating rested on

18  medical opinions that were properly rejected by the ALJ).

19    As plaintiff points out, the VA's 2010 rating increase was likely based, at least in part, on

20  the August 2010 compensation and pension examination performed by Samuel Richardson, MD.

21  See AR 661-64.  Dr. Richardson opined that, absent proper neurosurgical care, plaintiff was not

22  able to do any kind of work, even sedentary work, due to pain of movement and limitation of

REPORT AND RECOMMENDATION - 6

1    walking.  See AR 663.[2]   The ALJ rejected Dr. Richardson's opinion for two reasons:  (1) Dr.

2    Richardson was unable to perform a complete physical examination due to plaintiff's reports of

3    pain; and (2) plaintiff's presentation to medical personnel was not fully credible.  AR 21.

4         Notably, one month after Dr. Richardson's examination, plaintiff obtained a new MRI

5    that provided an additional objective basis for plaintiff's pain complaints.  AR 561-62.  This

6    MRI revealed "pronounced degenerative change at L4-L5 with annular tearing at both L4-L5 and

7    L5-S1."  AR 561-62.  The radiologist reviewing plaintiff's MRI noted that these findings "could

8    be an etiology of pain."  AR 562.   These findings appear to be a worsening from plaintiff's

9    earlier MRI studies that did not show annular tearing.  See AR 509-10, 514-16, 662-63.

10   Although the extent to which the VA relied on Dr. Richardson's examination of plaintiff and the

11   subsequent MRI findings to increase plaintiff's disability rating cannot be assessed from the

12   existing record, it would appear that the VA had access to both of these records in conjunction

13   with plaintiff's 2010 rating decision.

14        The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted

15   opinion of an examining physician.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996).  Even

16   when an examining physician's opinion is contradicted, that opinion "can only be rejected for

17   specific and legitimate reasons that are supported by substantial evidence in the record." Id. at

---

[2] Specifically, Dr. Richardson wrote:

> cannot do any manual labor.  He cannot climb steps.  In my opinion, under his current condition, he is not able to do any kind of work because of the pain of movement and limitation walking.  In the event he gets proper neurosurgical care, he very likely could go back to sedentary work of some kind if he were allowed to get up and down at will.

AR 663.  Regarding plaintiff's left shoulder impairment, Dr. Richardson separately opined plaintiff:

> cannot do any pushing and pulling like pushing a car or picking up furniture.  He cannot work overhead.  He can do sedentary work and the left shoulder problem does not interfere with doing sedentary work.  [Plaintiff] can pick up as much as 5-10 pounds, but he cannot lift overhead.

AR 664.

REPORT AND RECOMMENDATION - 7

830-31.  The parties appear to be in agreement that Dr. Richardson's opinion may be rejected for specific and legitimate reasons supported by substantial evidence.  <u>See</u> Dkt. No. 12 pp 8-9, Dkt. No. 15, p. 14.

Before specifically addressing the ALJ's reasons for rejecting Dr. Richardson's opinion, it is important to note that the ALJ appears to have overlooked or misinterpreted portions of Dr. Richardson's examination and opinion related to the functional limitations arising from plaintiff's back impairment.  <u>See</u> AR 18-19.  Although the ALJ referenced Dr. Richardson's opinion that plaintiff should not perform manual labor or climb stairs, the ALJ failed to discuss Dr. Richardson's ultimate conclusion that plaintiff could perform no work due to pain in movement and limitation walking due to plaintiff's back impairment.  <u>See</u> AR 18-19, 663.  Instead, the ALJ attributed a sedentary functional capacity opinion to Dr. Richardson.  See AR 21 (giving "some weight to Dr. Richardson's opinion that [plaintiff] could perform sedentary work.").

Additionally, the ALJ noted that Dr. Richardson was initially unable to estimate plaintiff's functioning due to a flare up of pain; however, this Court's review of the record shows no such notation in Dr. Richardson's examination notes.  AR 18-19 (citing AR 663).[3]  This error is significant because the first reason the ALJ offered to reject Dr. Richardson's opinion was that "Dr. Richardson was unable to perform a complete physical evaluation due to reports of pain".  AR 21 (citations omitted).  This reason, however, was not supported by substantial evidence in the record.  The record indicates that although plaintiff had difficulty with the range of motion

---

[3]  The ALJ's confusion appears to stem from the following comment made by Dr. Richardson: "Concerning Deluca, I am unable to estimate function in a flare-up without undue speculation."  AR 663.  In this comment, Dr. Richardson was attempting to comply with the ruling in <u>Deluca v. Brown</u>, 8 Vet. App. 202, 206-07 (1995),  that held in the context of VA disability ratings, pursuant to 38 C.F.R. §§ 4.40, 4.45, the appropriate rating for limitation of motion is determined after consideration of functional loss due to flare-ups, fatigability, incoordination, weakness, and pain on movement.  There is no evidence in Dr. Richardson's examination notes that would indicate plaintiff was experiencing a flare up of back pain at the time of Dr. Richardson's compensation evaluation.  <u>See</u> AR 661-64.

REPORT AND RECOMMENDATION - 8

1   testing due to pain, Dr. Richardson was able to complete these tests.  AR 662.   Regarding the

2   range of motion testing, Dr. Richardson wrote, "[plaintiff] does a little bit of movement.  He has

3   objective pain.  He is unable to go beyond this point."  AR 662.  The only test Dr. Richardson

4   was not able to perform due to plaintiff's pain was a repetitive motion test.[4]  See AR 662.

5   Importantly, there is no indication in Dr. Richardson's report that Dr. Richardson considered

6   plaintiff's physical evaluation insufficient to allow for an assessment of plaintiff's functional

7   limitations.  See 661-64.  For this reason, the ALJ's rejection of Dr. Richardson's opinion on the

8   basis that Dr. Richardson was not able to perform a complete physical evaluation was not

9   supported by substantial  evidence.  See Lester, 81 F.3d at  830-31.

10

11        The second reason offered by the ALJ to reject Dr. Richardson's opinion, that plaintiff's

12   presentation to medical personnel was not credible, was, however, supported by substantial

13   evidence in the record.  See Lester, 81 F.3d at  830-31.   The opinion of a physician premised on

14   a claimant's own account of his symptoms and testing within a claimant's control may be

15   disregarded where the claimant's complaints have been properly discounted.  See Tonapetyan v.

16   Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (finding that when the record supported discounting

17   the claimant's credibility, a doctor's reliance only on the claimant's subjective complaints and

18   testing within the claimant's control was a specific and legitimate reason to reject a doctor's

19   opinion); see also Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999)

20   (opinion of physician premised to large extent on claimant's own accounts of her symptoms and

21   limitations may be disregarded where those complaints have been properly discounted).   As

22   discussed in greater detail in the following section, the ALJ properly rejected plaintiff's

23

24

25

26

---

[4] This is the testing that the Deluca court determined was required by 38 C.F.R. § 4.40.  See, 8 Vet. App.206-07.
There is no analogous regulation in the Social Security Act.

REPORT AND RECOMMENDATION - 9

testimony by providing clear and convincing reasons supported by substantial evidence. See Lester, 81 F.2d at 834.

In forming an opinion regarding plaintiff's functional capacity, Dr. Richardson reviewed plaintiff's VA claims file, which included abnormal MRI studies conducted in 2004 and 2007, and an abnormal lumbar spine x-ray from 2009; observed plaintiff walk and sit; and completed a physical examination, which included straight leg raising, range of motion testing and neurological testing that included motor function/strength, reflex, and sensory testing.  See AR 661-64.  Although Dr. Richardson's opinion that plaintiff could not perform any work was based, at least in part, on objective medical testing, including abnormal MRI and x-ray findings, this objective evidence was unchanged from plaintiff's initial pension and compensation evaluation in 2009 that assigned only a 20% rating based on plaintiff's back impairment.  AR 239-40, 514-17.  For this reason, the ALJ's conclusion that Dr. Richardson's opinion was based primarily on plaintiff's presentation and pain reports was reasonable.  See Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record.").  This conclusion was also reasonably supported by Dr. Richardson's own statement that plaintiff was "not able to do any kind of work because of the pain of movement and limitation walking."  AR 663.

Although the ALJ's rejection of Dr. Richardson's opinion was supported by substantial evidence, this evidence was insufficient to reject the VA disability rating, because, as discussed previously, an MRI exam completed one month after Dr. Richardson's evaluation showed "pronounced degenerative change at L4-L5 with annular tearing at both L4-L5 and L5-S1", which was a possible etiology for plaintiff's increased pain complaints.  AR 562.  This subsequent MRI finding provided additional objective support for Dr. Richardson's opinion

regarding plaintiff's limitations.  Because this report was contained in plaintiff's VA records, plaintiff's 2010 VA rating decision may have been based on a combination of Dr. Richardson's opinion and these subsequent MRI findings.  For these reasons, the first reason offered by the ALJ to reject plaintiff's VA disability rating was not a valid reason supported by the record.  See McCartey, 298 F.3d at 1076.

**B.  The ALJ's second reason for rejecting plaintiff's VA disability rating**

The second reason offered by the ALJ, that the VA rating decision was inconsistent with plaintiff's reported activities, including taking college level courses, driving, picking up cigarettes and using the computer to play games and look for work was also not supported by the record.  A claimant's daily activities may provide a valid legal basis for rejecting medical opinion or testimonial evidence.  See Morgan, 169 F.3d at 601-02 (upholding the rejection of a physician's conclusion that claimant suffered from marked limitations in part on the basis that other evidence of claimant's ability to function, including reported activities of daily living, contradicted that conclusion); see also Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (finding that daily activities may form the basis of an adverse credibility determination if such activities meet the threshold for transferrable activities or if they contradict a claimant's other testimony).

All of the evidence in the record regarding plaintiff's activities was provided by plaintiff or his wife. See AR 54-59, 283-90.  Plaintiff testified that he was able to drive short distances but his wife did most of the driving.  See AR 21, 53-54.  Plaintiff also testified that he had taken a college level history class earlier in the year and was taking a geology class at the time of the ALJ hearing.  See AR 54-59.  Plaintiff explained that these were correspondence courses that he took on CD, and that the classes required him to write short papers and submit them online.  See AR 17, 54-59.  Plaintiff reported spending about two hours a day on these classes.  See AR 58-

REPORT AND RECOMMENDATION - 11

59.  Plaintiff also testified that he used the computer to look for jobs and to play card games; however, there is no evidence in the record regarding the frequency or duration of these activities.  AR 78-79.   Plaintiff's wife corroborated that plaintiff was able to drive but could no longer travel long distances without pain.  AR 284, 286.  She also reported that plaintiff shopped for cigarettes "maybe 1 stop a week, 10 minutes if he goes at all."  AR 286.

As described by plaintiff and his wife, these limited activities do not meet the threshold for transferrable skills because this testimony does not support that plaintiff  "is able to spend a substantial part of [his] day performing household chores or other activities that are transferable to a work setting."  See Smolen, 80 F.3d at 1284 n.7 (noting that "many home activities may not be easily transferrable to a work setting").  Nor do these activities contradict plaintiff's other testimony.  See Orn, 495 F.3d at 639.  For these reasons, this Court finds that the ALJ's use of this evidence to reject plaintiff's 100% VA disability rating was not supported by the evidence.  See McCartey, 298 F.3d at 1076.

**A.  The ALJ's third reason for rejecting plaintiff's VA disability rating**

The third reason offered by the ALJ to reject plaintiff's 100% VA rating, that the decision maker at the VA may have placed too much reliance on plaintiff's subjective complaints or presentation of pain and cognitive impairment, is purely speculative and, therefore, not supported by the record.  McCartey, 298 F.3d at 1076. There is insufficient evidence to establish whether the VA relied on plaintiff's subjective complaints and presentation or other objective evidence, such as MRI and x-ray findings, in reaching plaintiff's disability rating decision.  As discussed above, a 2010 lumbar spine MRI showed abnormalities that could be the etiology of plaintiff's reports of increased back pain since his discharge from the military.  AR 562.  Because it is not possible to ascertain what evidence was relied on by the VA from the existing record, the ALJ's

REPORT AND RECOMMENDATION - 12

1   rejection of plaintiff's 100% VA disability rating because it was based on plaintiff's subjective

2   complaints and presentation was not supported by the record.  See McCartey, 298 F.3d at 1076.

3       For these reasons, the ALJ failed to provide valid reasons supported by the evidence to

4   reject plaintiff's 100% VA disability rating.  See Id.

5   II.   The ALJ's Assessment of Plaintiff's Credibility

6
7       Plaintiff argues that the ALJ erred in rejecting his testimony.  Dkt. No. 12, pp 13-19.

8   Plaintiff raises multiple errors with the ALJ's credibility analysis; however, that some of the

9   reasons for discrediting a claimant's testimony should properly be discounted does not render the

10  ALJ's determination invalid, as long as that determination is supported by substantial evidence,

11  as it is in this case. Tonapetyan , 242 F.3d at 1148.  Questions of credibility are solely within the

12  control of the ALJ.  See Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).  The Court

13  should not "second-guess" this credibility determination.  Allen, 749 F.2d at 580.  In addition,

14  the Court may not reverse a credibility determination where that determination is based on

15  contradictory or ambiguous evidence. See id. at 579.

16
17      To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent

18  reasons for the disbelief." Lester, 81 F.3d at 834 (citation omitted).  The ALJ "must identify what

19  testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also

20  Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the

21  claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear

22  and convincing." Lester, 81 F.2d at 834.  The evidence as a whole must support a finding of

23  malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

24
25      Here, the ALJ provided clear and convincing reasons supported by substantial evidence

26  to reject plaintiff's testimony.  Lester, 81 F.2d at 834.  For example, the ALJ observed that

REPORT AND RECOMMENDATION - 13

plaintiff was inconsistent in his presentation to clinicians.  See AR 19-20.  In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen, 80 F.3d at 1284.  As the ALJ noted, plaintiff engaged in mental health treatment with the clinicians at South Mississippi Psychiatric Group for over six months.  See AR 19-20, 425-48.  During his treatment at SMPG, plaintiff was observed to have intact memory and at least average intelligence at almost all treatment visits.  See AR 19-20 (citing AR 427-44, 447).   In contrast, when plaintiff was examined by a mental health specialist at the VA, plaintiff refused to discuss his trauma history and was not able to tell the clinician if he was taking any medications.  See AR 20 (citing AR 518).  As the ALJ noted, plaintiff's inability to answer whether or not he was taking medications was inconsistent with his presentation just months earlier at SMPG where plaintiff demonstrated intact memory and at least average intelligence.  See AR 20 (citing AR 425-48).  The ALJ also observed that when plaintiff was outside the context of a mental health examination, plaintiff was able to discuss his compliance with medications.  See AR 20 (citing AR 522).

The ALJ also noted that the evidence suggested plaintiff exaggerated his symptoms during mental health examinations.  See AR 20 (comparing AR 480, 518 to AR 587).  See Tonapetyan, 242 F.3d at 1148 (ALJ properly discredited claimant's testimony in part based on "her tendency to exaggerate").  For example, during a consultative psychological evaluation approximately one year after his medical discharge from the Army, plaintiff alleged he did not know the year of his discharge, the colors of the American flag, or how many months there were in a year.  See AR 20 (citing AR 480, 482).  The examining psychologist observed that plaintiff's presentation at the examination was inconsistent and that plaintiff did not appear to be putting

REPORT AND RECOMMENDATION - 14

forth his best effort.  See AR 20 (citing AR 479).  The ALJ noted that plaintiff's presentation at this examination was inconsistent with a questionnaire plaintiff completed a few months later where plaintiff was able to provide the date of his discharge and the length of his service in the Army.  See AR 20 (citing AR 587).   The ALJ also noted that plaintiff's presentation at this consultative examination, as well as other examinations, was inconsistent with plaintiff's testimony that he was able drive a motor vehicle and pass college level correspondence courses.  AR 21 (citing AR 479-83, 696, 712, 773, 782- 85, 797-805); see also AR 54-59.   These are clear and convincing reasons supported by substantial evidence sufficient to reject plaintiff's testimony.  Lester, 81 F.2d at 834.

Although plaintiff argues for a more favorable interpretation of this evidence, "[i]t is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached.  If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them."  Sorenson, 514 F.2dat 1119 n.10.  "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld.  Allen, 749 F.2d at 579.  (quoting Rhinehart, 438 F.2d at 921).

III.    The ALJ's Findings at Step Five

Plaintiff also argues that the ALJ erred by relying on VE testimony that was inconsistent with the Dictionary of Occupational Titles ("DOT").  See Dkt. No. 12, pp 19-20.  Specifically, plaintiff argues that his need to sit or stand every 30 minutes, as determined by the ALJ in the residual functional capacity finding, is inconsistent with the DOT definition of sedentary work that requires "sitting most of the time, but may involve walking or standing for brief periods."  See DOT, 726.687-030 Loader, Semiconductor Dies, 1991 WL 679637; DOT, 739.687-182, Table Worker, 1991 WL 680217; DOT, 713.687-018, Final Assembler, WL 1991 679271.

REPORT AND RECOMMENDATION - 15

Although plaintiff does not address this in his brief, it is notable that the DOT definition of sedentary work also encompasses jobs that require walking and standing only occasionally, if all other sedentary criteria are met.  Id.

The ALJ has the affirmative responsibility to ask the vocational expert about possible conflicts between the VE's testimony and information in the DOT.  Haddock v. Apfel, 196 F.3d 1084, 1091 (10th Cir. 1999); SSR 00-4p, 2000 WL 1898704.  Before relying on evidence obtained from a vocational expert to support a finding of not disabled, therefore, the ALJ is required to "elicit a reasonable explanation for any discrepancy" with the DOT. Haddock, 196 F.3d at 1087; SSR 00-4p, 2000 WL 189704 *1.  The ALJ also must explain in her decision how the discrepancy or conflict was resolved. SSR 00-4p, 2000 WL 189704 *4.

Here, the ALJ requested that the VE identify and explain any conflicts between the VE's testimony and the DOT.  AR 91.  The VE agreed to comply with this request.  AR 91.  However, as plaintiff points out, the VE failed to discuss the apparent conflict between the VE's testimony and the DOT regarding plaintiff's need to sit or stand every 30 minutes.  For this reason, the basis for the VE's testimony that the occupations of semiconductor die loader, table worker and assembler could accommodate plaintiff's need to sit or stand every 30 minutes is not clear.  Because this apparent discrepancy was not addressed by the VE's testimony or resolved in the ALJ decision, on remand, the should ALJ further develop the record regarding the basis for the VE's testimony and resolve any conflicts or discrepancies with the DOT.

IV.    This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292.  Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional

REPORT AND RECOMMENDATION - 16

investigation or explanation." <u>Benecke v. Barnhart</u>, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).  Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." <u>Id.</u>

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." <u>Smolen</u>, 80 F.3d at 1292; <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

<u>Smolen</u>, 80 F.3d 1273 at 1292; <u>McCartey</u>, 298 F.3d at 1076-77.  Here, remand is necessary for reassessment of plaintiff's VA rating decision, and further development of the vocational evidence.

<u>CONCLUSION</u>

Based on the foregoing discussion, the undersigned recommends the Court find the ALJ improperly concluded plaintiff was not disabled.  Accordingly, the undersigned recommends as well that the Court reverse the ALJ's decision and remand this matter to defendant for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g) and in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto.  <u>See</u> <u>also</u> Fed. R. Civ. P. 6.  Failure to file

REPORT AND RECOMMENDATION - 17

objections will result in a waiver of those objections for purposes of appeal. <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **July 11, 2014** as noted in the caption.

DATED this 19th day of June, 2014.


Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 18